We call the final case for today, 2015-10602, Jose Luis Hernandez v. Results Staffing, Incorporated. Good morning, Your Honors. May it please the Court. I have the honor of representing the appellant in this case, Sergeant 1st Class Jose Luis Hernandez. As a brief overview, there were three general points of error raised with the trial court. The first, that the appellant was denied reemployment in violation of 38 U.S.C. 4312. The second, that in the event that the court deems that he was, in fact, reemployed, he was improperly terminated in violation of Section 4311. And the third, that the award of costs against the plaintiff was plain error. I will be making arguments in the first two and leave the third unless any questions are raised. To break down the 4312, this is an area, as I'm sure you're aware, where there's very little case law. Much of it is going to be determined here today. So I've broken down 4312 into two areas. First would be whether or not Mr. Hernandez complied with the reporting to work requirement of Section 4312E1AI or, in fact, 4312E2. Counsel, what do we do with the interpretation of the statute by the regulation? No one mentioned it. I don't seem to have it in front of me. But what's addressed the problem of the weekend warrior as distinguished from someone on active duty for an extended period of time coming back? Well, and the only real difference in the way that the code is written is 4312E clarifies as a provision for if you were absent for less than 31 days, then it is the employee's obligation, the service member's obligation to report to their employer. If it was an absence of more than 31 days, then they would have to reapply. So that is the chief difference. The problem, one of the problems here, though I don't think the court has to resolve it in order in this case, is whether or not or what properly constitute reporting to the employer. Only Judge McBride, at least factually, thought he concluded that the reporting didn't occur until the 16th, Tuesday, correct? I am not certain about that. If, in fact, the reporting did not occur until that is what we would claim. I know, but that seems to be what he said in his oral findings of fact. I mean, he pushes it out of 4312 altogether. He says this isn't a reemployment case, right? He looks at it. I'm asking if I could. I read that he said there was a reporting factually and that he said there was no issue of reemployment, and therefore he drops to the 4311 burden shifting and says I've heard the facts. It's not even a mixed motive case. I conclude that the results fired your client for a workplace violation. That's how I understood his ruling. And that was not how I understood it. How do you understand it? Honestly, when the crux of this argument is a 4312 claim, there has to be a determination as to whether or not he was reemployed. When asked whether or not, in the conclusions of law, whether or not Mr. Hernandez was reemployed, the judge says I'm not really sure why we're talking about this and I'm not making a decision. Did he decide, did he thought that the phone call was reporting? I thought he reported on, I thought Judge McBride determined that he reported on the 14th when he had the phone call. And that that's, and that that was the reporting and then the fact that he didn't show up for work. And it's that that triggers. That would be the appellee's argument, but there was no, there was no clarification from the court as to what was driving those findings. So you're saying, I'm looking for it here and I thought I had it. You're saying that in his findings of fact, he didn't say that the reporting occurred on Tuesday the 16th. I have a distinct memory of that, but you would remember better. I don't believe that he did. Okay. Then that's my mistake. And if, in fact, and if I'm wrong, I would suggest that that would be not permissible, a finding not permissible under the law as it's currently written. If you look at 4312E1 reads, which is the overarching, reads subject to paragraph 2, a person referred to in this subsection shall, upon the completion of a period of service in the uniformed services, notify the employer. The conversation on Sunday occurred, according to the stipulated facts, before Mr. Hernandez was released from military service. So the appellee's arguments rest completely on the position that there is no beginning of the time necessary to report, only an end established by the statute. Okay. But so if Judge Higginson were correct that the district court found that he reported on the 16th, you would still have your argument that he was, had a back problem on the 15th. And reporting on the 16th wouldn't be wrong if he had a back problem. Right. Is that, so it doesn't, that's not dispositive, is it? I don't think it would be wrong under either interpretation. Right. I didn't say it had any outcome to benefit you or them. I just said I thought that the district court made a finding of reporting on Tuesday the 16th. I did not apply it to whether 4311 or 4312. Yes. Go ahead. So what I would suggest is that, so the first thing is that the 4312 sets that start in that line that I just read. So the argument that he, in fact, reported before he was released from service I don't think could be accepted. So then we move on. And I don't think the Court has to really address the 4311E1A issue because we have extensive arguments in the briefs about what constitutes reporting to work, which is largely unresolved. There's one district court case where the district court in Jordan air- If 4311 were the only issue before McBride. Yes. I think I'm right, but disagree with me. You would have to say he made a clear error of fact in concluding that the only motive was the corporate one, and there was no- Is that fair to say? Well, what I would say is that, in fact, the motive was there was no, there was not great evidence of general malice towards his service. I'd have to admit that. But their motive was that he reported within the time frame that they expected and not within the time frame that he was required to report under the USERRA. And so that, I think, would be prima facie discrimination if, in fact, discrimination is a required element. The statute requires employers to provide certain accommodations to military returning. Yes, Your Honor. To me, however you slice this, the honest of the facts were that he either injured or re-injured back in the four-hour-plus drive back the day before, took some pills for that, whatever, for pain. And when he woke up the next morning, severe pain, and he couldn't come in. Yes, sir. So if you, unless you accept the principle that he had, even if you, I guess if you accept the principle that he told the guy he was going to be in on Monday morning, but then he has really an injury, as contemplated by the statute, which would give him the next day, why isn't that? That's what I would argue. I'm not certain. It was very unclear as to how Judge McBride came to his conclusions, to me at least. I don't recall him addressing the injury component of this. Was it presented to him? I'm sorry, what? Did the injury extension that the statute contemplates, was that argument presented to Judge McBride? Well, at trial, no opening or closing arguments were allowed. So we didn't really have the opportunity to, it was presented in briefs prior to trial. So he made no findings at all on the injury extension, right? Because he just looks at it totally differently. Yes, I believe so. And I've still grappled with how, in fact, he looked at it. But yes, Your Honor. Why did you not go back to Judge McBride and say, you didn't address this really important part of my case about whether the gentleman had a back problem? Because we filed this appeal, and this was my first federal trial, and now I'm here. I understand. And so the, but there are, I have a few more minutes, and there's a few other points I'd like to raise specifically. The 43, so if, in fact, we come, so I think the medical issue, 4312e2, there was not overwhelming evidence. The appellee now argues there wasn't sufficient evidence, but there wasn't much evidence. He went. We provided a doctor's note. There was the testimony of his wife and himself. She had to take the day off of work to take care of him, which was testified to at trial. Did they dispute that he had a back problem? No, Your Honor. Did they put on some kind of thing that he was a malingering liar and he was out playing golf that day or something? No. There was no dispute at all. They admitted and stipulated facts that they were aware of his preexisting back injury, which he injured in Iraq. So you don't dispute that over the weekend there was a call where he said, You can expect to see me Monday. Well, this is the – there was a phone call of less than one minute where Jose and Hernandez returned the phone call, and presumably, according to the testimony in that conversation, he was told that they wanted him Monday morning at 5 o'clock at this place. According to his supervisor, his only words were okay. The judge did not find that he provided any promise that he would return, only that the supervisor had the impression he would be there. And there's no evidence one way or the other that the back problem had manifested itself or not at that point, right? That's not in the record. Yes. You know, whether or not it's one of those kind of back injuries that shows up after a few hours and you don't feel it right away. I did testify that he woke up the next morning with severe pain. And then – He did have – and he did testify that he had some pain in his back at that time. They'd been to the shooting range earlier that day, and he was having some issues. However, it was not to a level of concern that – but – To rule on that seems fairly straightforward, in fact, specific. To rule on the other exemption, or what I think of as an exemption, the full calendar day, would have much more far-reaching consequences because, as Judge Higginbotham said, the weekend warrior often will finish at 7.30, and if you add eight hours, that's essentially saying they would never need to show up until Tuesday. That is generally true. What do you mean that's generally true? That would be the effect of our ruling that way, but is it – has it been stated ever before anywhere? No. And generally speaking, though it has never been stated, to my knowledge, in the way that the appellee is asking you to state it either, the more general interpretation seems to exclude the first full calendar day for some reason, which is essentially release from service, safe travel home, eight hours, and it's the first full regularly scheduled work period following that. So, in this case, the first full regularly scheduled work period was five hours after he came home. So, under either interpretation, what the appellee is asking you to do is apply a standard to 4311E on which you may not even have to get to, and maybe I'm wasting time on, but what they're asking you to do is to apply a standard that would say it would be the shorter of two different standards pulled out of that subsection, which would be first full calendar day or first full regularly scheduled work period on the first full calendar day or safe travel home in eight hours. And that's how they argue that, in fact, he had to report on Monday. The reality – that creates a completely untenable situation. If Mr. Hernandez wasn't released until 11 o'clock at night and was scheduled for a 1 o'clock shift 300 miles away, by the standard they're asking you to apply, he would have had to have been there or would not have properly reported. Where is he? What base is he coming from? I'm sorry, what's that? What base was he coming from? I'm not sure the actual – it was in Houston. Okay. Sorry. So, if you win on – just assume arguendo that you win on the back injury part of the case, what result? Well, then we have to look at – well, then I think we move to the fact that he was – he reported for work on Tuesday morning. What did he do with the case? Well, then the question is, was he, in fact, reemployed or not? And there is – so, basically, essentially, he shows up at 8 in the morning. He's at a field office, which is where he generally goes on Tuesdays. Around 9.30, he gets a phone call from a supervisor who says, where are you? And he says, I'm at the Garland office. He said, I didn't know you were here. Come to my office. As soon as he gets to his office, he says – I don't think I'm asking my question very well. Yes, ma'am. Did he remand the case at that point and then let the district court consider – the case or what result? I think there's sufficient facts just in – that have been agreed to to render judgment in favor of the plaintiff. It may have to go back on damages issues, but that is the result that I believe would be appropriate in this case. And if I could address one final issue on the 4312 on the reemployment, I think that's the bigger issue. So whether we have to get to 4311 or not, I would say if you look at this court's opinion in Bradbury v. Jefferson, it says that actions by an employer after the return that are not related to resolving reemployment issues can raise Section 4311 discrimination claims. I think the clear converse of that is that if it is related to a reemployment claim, that it goes back to 4312, even if it's after technical reemployment has happened, which I would, again, argue that it did not in this case, but if the court were to find it did. Thank you very much. Thank you. Mr. Klond. Yes, sir. Your client provides temporary workers to particular clients. Is that the way it works? That is correct. So you're at the placement situation. What troubles me about this is that I do not understand under the statute why, with his injuries, which were potentially incapacitating on that day, under the statute he is not entitled to that day. I mean, I'm accepting all your other arguments, but the statute gives this returning serviceman that extra grace. It's an accommodation. Your HR section didn't address why or what happened to him or anything else. They just sounded over and fired him because they were pretty expendable, Hernandez. If you just put in another one, Hernandez. But what happened? Why was he fired? Because he didn't report that day despite when he couldn't? Or did somebody ask him why he didn't? Your Honor, I would have a couple of responses to that. First, I would say that the reason that Mr. Hernandez was fired is because he violated the employer's no-call, no-show policy. In other words, if you're not going to be able to appear for your work schedule, then you are to notify the employer in advance that you're not going to be able to appear and the reason for your failure to appear. When did he call in sick? He called in approximately 7.30 on Monday morning. Rather than the 5 in the morning. Correct. So by that point, his work schedule. It's not disputed that he had a disabling back injury, I guess. You haven't disputed it? We have not disputed the fact that he had a back injury. He had a note from a doctor. So he was two hours late and what happens to the statutory eight hours or so accommodations for the extensions for a serviceman that's injured? Well, Your Honor, first of all, the convalescence portion of the statute refers to reporting just as the portion that calculates the time for notice of intent to return does as well. So part of the dispute here between our side and between the appellant is what is meant by the word reporting. The appellant believes that reporting means physical appearance. It requires a physical appearance in order to report under USARA 4312. Why didn't Judge McBride's rulings suggest that he found that the reporting occurred by phone on Sunday?  My understanding is actually the same as opposing counsel with regard to the issue that you had raised on Judge McBride's ruling. My understanding was not that he had found reporting on the 16th. In fact, one of his findings effectively, the second finding, in fact, was that the employer's policies applied to the employee on Monday, the 15th. But did he make a finding that reporting, as you're describing, occurred on Sunday? He did not make a specific finding to that effect. Did you argue that in your brief that we were supposed to find that it occurred on Sunday in the phone call? Yes, Your Honor. That is our position. In fact, our position is that in this case, 4312 requires the employee to provide notice of intent to return to the job, and it requires the employer to rehire that employee, to bring him back to his prior position. As the regulation points out, that particular reporting characterization is a notice requirement, not that he's reporting. In a sense, I'm here ready for duty, sir. It is a notice of the serviceman scheduled to be released in three months, four months, whatever it is, coming off active duty and just to give you, I want to come back to my job. That's what the statute talks about. And what this is being applied is that he checks in. I'm on my way. I'm driving in. And he gets the schedule of what it is. And at that point in time, he thinks that he can make that. But then it turns out he's injured. So it just escapes me why they, under the statute itself, and he called in within two hours of when he was reporting. I should have been there. But with an explanation of that he had overslept because of the pain medication he had taken. And nobody disputes that. So instead, there's no inquiry made of any kind, as I understand it. He's just fired. Here's the rule. Here's the link, so forth. Well, the statute contemplates accommodation. I don't need to see the truth for you and give you any wink at this. Maybe they didn't even know about the statute. They should. Well, Your Honor, a couple of points here as well. First of all, I'm appointedly characterizing this in a way that's disfavorable to you because that's the impression, in all honesty, that I got from reading your briefs and looking at this case. First of all, Mr. Hernandez did have a disciplinary record. In fact, the record reflects that he was one of and perhaps the only manager-level employee who had ever been disciplined previously for being tardy to work. That had happened in April and April the 5th. So he did have some record of being late for work because the written disciplinary sanction was not even the first step. To reach that point meant that there had been multiple occasions in the past. What does that have to do with this issue that Judge Higginbotham is asking you about? Well, I merely raised that to show you, Your Honor, that the decision to terminate him was taken in the context of not just what happened in that particular 24-hour period, but it was in the context of the ongoing employment relationship. And we see on Tuesday morning he again failed to follow the no-call, no-show policy. At a time where convalescence was no longer an issue, he'd been released and he did not claim to have an injury on Tuesday morning. But on Tuesday morning he showed up at the wrong location, and he claimed that he didn't know, but in fact he had received an e-mail as he was told by results that he would be receiving an e-mail. He received an e-mail as soon as results knew where he was supposed to report on Tuesday. So his rules say you've got to call us, and it's undisputed he did call and said I'll be there, right? On Sunday. So then the – he said I'll be there, I'll be okay. He received a call. He received a call and he responded and said okay. Yes. So far he's in compliance. Yes. Your theory is that when he gets the back problem in the morning of Monday he did call and say I can't come, but you're saying the termination of activity of his was to not call between 5 and 7.30? Is that the theory? The theory is that he should have called before 5, and in fact he set his alarm. Does the record reflect when he normally is expected to be at work? Isn't it 8? The record reflects that it varies somewhat, but it is on some occasions 8. The serviceman is driving three or four hours home from his weekend duty, and he's supposed to report at 5 o'clock the next morning to work, and he should have called in, and it turns out, you say, at least by 4 o'clock in the morning, and to say that he's not going to be there, yeah, okay, I understand your argument. Yes, Your Honor. Let me return to a point as well that the judges had raised regarding his back problem manifesting on Sunday. The facts show that his back problem actually had manifested on Sunday. He testified that approximately noon on Sunday he had sought and received medical attention for the back problem, and so it was already known to him, and he did not mention that on the call Sunday evening, and he did not reach out to the employer at any point on Sunday evening, and then he slept through his alarm on Monday morning. But wasn't that because he was trying to shake it off, and, you know, if you have a chronic back thing, you have some days that are better than others, and some days you push through, and he thinks he's going to be okay to go to work the next day. That was his claim, yes. That was his claim. And there's no rebuttal to that? Well, we have little to go on as far as what his actual condition was or level of pain other than his testimony. There's no other real evidence one way or the other. But the district court didn't disbelieve his testimony or make any findings to that effect, did he? With regard to his back injury? Yes. No, I don't believe the district court did. Mr. Zier, do you agree with the opposing counsel there's really no law that clarifies the line between 4312 and 4311? No, I don't agree with that, actually. I think that the Francis case discusses that where it says that 4312 and 4311 are actually covering separate time periods. 4312, according to Francis, covers the time from when the employee is indicating to the employer that he wants his job back to the moment of initial immediate reemployment. I believe the phrase there is immediate reemployment. At that point, 4311 takes over, 4311 being wrongful termination, acts of reprisal, things that happen after the employment occur. So that would suggest we're in the world of 4312. I would argue that actually 4312 is satisfied by both parties and that we're actually in the world of 4311 because here the two things that have to happen under 4312 are the employee has to say, I want my job back, and the employer has to say, okay, you're rehired, you have your job back. Those two things are what are necessary under 4312. The whole part of the statute is really not even applicable to our fact pattern here. This is not a this is a weekend warrior, and that's what the implementing regulation to the statute, I think, addresses is that weekend warriors are differently situated. And it's favorable to the employer in a way that it defines it. The statute contemplates two situations. One is a lot of active duty as distinguished from the reserve component. And so they're serving a two-year or three-year service term there in Iraq, wherever they are. But then you get down to the last, you know, few months before your release, you tell the employer I'm coming back so they will have a job for you. And the employer takes that. That's the first reporting requirement, as I understand the statute. Now, what happens is that you have the weekend warriors who are employed constantly. I mean, nobody wants the job back. That's not a problem. It's just a question of reporting, communicating with it when it gets back. And the regulation comes on, and that's why I direct the attention to it. It talks about the weekend warrior. And my problem is simply that what got lost in this thing is his injury. Now, I don't know whether your employer had other basis for firing. Perhaps he did. You suggest that he did. But that isn't what he defended on. And they didn't say that they fired him because of his absenteeism. They fired him because he didn't do this. So that's kind of what we're stuck with. Well, Your Honor, the record reflects as well that the failure to follow the no-call, no-show policy on Tuesday did contribute to it because his supervisor was asked if he had. But he reported to duty. He was there. He didn't go over and say, Hey, guys, I'm here. Actually, Your Honor, he reported to the wrong location, so he couldn't perform his job task because he went to the wrong place. Is that why you fired him? He reported to the wrong location? Well, it was the combination of his. Somewhere there's a reason. Right. I know there's in the record that he reported to the wrong location. Right. But do your people say, Aha, we got him because he went to the wrong location? No, they don't say that, Your Honor. They don't use that as the reason. What they do say is when asked directly, is there any possibility you would have reconsidered the decision to terminate him had he appeared at the proper place and done his job on Tuesday morning, the response from his supervisor was yes, more than likely. However, his failure to then appear at the correct place on Tuesday, even though he'd been clearly informed where to go and what he needed to do, and he simply neglected to read the email that they sent him. There was confusion about where to report. Well, Your Honor, because of the new project that was being. But he wasn't there on Monday. Correct. He wasn't there on Monday. The record reflected that the lady that handles the injury exemptions was at this other location. That is correct. So he would naturally think, Oh, I got to really prove up what the doctor said. I'll go to her right away. He might have thought that, except that he'd been specifically told before his service, we will be sending you an email telling you where to report. It may be different than usual because of our special project this week. They did send him an email on Saturday, and he simply didn't look at it. Assume that you do not prevail on the back injury part of this case. Just assume, argue, and doubt. What result? Well, when you say do not prevail on the back injury part. We find that the court did not apply. Did not apply 12E2A correctly, and that he did have undisputed evidence shows he had an injury, so he timely reported based upon the fact that he had an injury, so he wasn't due to report until the next day. Just assume, argue, and know that we found that. Okay. I'm not saying that we are. But if we did, what happens then? Well, I would, first of all, then turn the court's attention to the Tuesday, July 16th issue and the failure on Tuesday, July 16th to report properly, which did not have anything to do with the back injury or convalescence. I guess I'm really asking, do we render, or do we have to remand for certain determinations if you were to lose? Well, I think, Your Honor, at a minimum, there would need to be a remand of some type for damages issues. Okay. Although you think that you can win on this Tuesday wrong location issue as a separate thing. Yes, I do. Is there anything between Tuesday and the separate location in damages, or is that your last fallback argument? Let me pick you up on something. You said something, whether they were reconsidered. That suggests to me the decision to fire him was already made. There was nothing to reconsider, was there? In other words, when he reported on Tuesday, you had already decided to fire him, and so he didn't know where to go, and so then you said, because the question put to him was not did you decide to fire him. The question put to him, would you have reconsidered your decision to fire him if you had reported the correct place? And they said, might have done so. So when was the decision to fire him actually made? Well, Your Honor, the termination letter was drafted on July 15th, during the day on the 15th after he had failed to appear. On Monday? On Monday, correct. Within hours of that. Oh, okay, so. There is, again, there is some question as to when the final. We now know that there's really no other reason for termination on this record than he was not there that morning. But, Your Honor, that was the primary motivating factor. Not primary. You had already drafted the letter to fire him. Well, in the context of his prior failures, had this been the first time he had ever had any disciplinary issues, then they might not have. I want to pick up on that, except you said reconsider. Right. The record does reflect that. Okay, I got you. Thank you. Thank you. I'm sorry, Your Honor, I continue to come back to your point. Is there anything, assuming you lose on that point, for the reason in the question, that the decision was not made on Tuesday, so it doesn't really matter whether they were going to reconsider on Tuesday. What matters is what happened on Monday. And is there anything else standing between remand just for damages? Is that all the claims? Have we gone through all the claims? Well, we have not discussed this 4311 claim. As I'm understanding your hypothetical, then the 4311 claim would effectively be moot because the court would be deciding it on a 4312 basis. Remand for remedial relief, was that reinstatement? I'm sorry, Your Honor. We would remand to the district court. We would reverse and remand with a direction to the district court to order him reinstatement? Is that the remedy or money damages or what? I don't believe reinstatement is the remedy. As I read it, it's the remedy even being sought. I think there would be a remand to determine exactly what the damages claim would be. I don't, frankly, understand it that well myself. And we don't have a record on that. Correct. That's correct. Okay. Okay. Your Honor, let me briefly address before my time is up the costs issue. I know that the appellant did not file a motion in the district court, a Rule 54 motion, challenging the costs award. And he's making the argument that, in fact, there was a clear error under the clear error standard. What were the costs awarded? The costs awarded were, I believe, approximately $5,700 costs of court. And his argument is that despite his failure to raise that at the district court, that this court should reevaluate that issue. We've cited case law saying that failure to raise that issue in the trial court constitutes a waiver. Yeah, the predicate of that is that you prevail on the merits. And so what happens here is that this worker now has district court awarded $5,700 attorney's fees against Mr. Hernandez. Maybe he does need a job. Well, Your Honor, I don't believe it was attorney's fees. It was costs only. Costs of what? If it weren't attorney's fees, what was it? It was various costs of court that were taxed against him. $5,700? Yes, sir. Well, do you take depositions or something in this case? There were a few depositions in the case. Well, I want to – let's go ahead and do this since you brought this up. Why isn't plain error established under this? The statute on its face says, to the contrary, you are not entitled to cost. And it says it on, so it's one and two are satisfied in plain error. His rights are certainly affected with having to pay thousands of dollars after losing his case. And why shouldn't we exercise our discretion under prong four to fix this error? I mean, even if you are prevailing on all these other things. Right. Well, Your Honor, there could well have been error in the cost determinations that all of the courts that we've cited were facing. And in every case they found that because of the waiver, they didn't even investigate whether there was error. There could have been error. Actually, in the Forbush v. J.C. Penney, for example, the standard is plain error review of the argument not raised before the district court. So do you concede that if we were to apply plain error rather than just to say that it's forfeited, waived for all times, that you cannot satisfy, I mean, that the other side can satisfy plain error? My only point on that would be that the fourth prong of the error test would be that the court must decide that it has to do with the fairness, Why isn't it fair to not make the gentleman who was terminated not have to pay costs that Congress has decided they shouldn't have to pay? Well, Your Honor, the integrity of the process also involves following the rules. And as the Court well knows, there are claims that are waived all the time because they're not appropriately brought at the right time or the right procedures aren't followed. This is just one of those types of waiver claims. Thank you. You may proceed. So just a few things. One, just to clarify it, it may not be an issue here, but on the Tuesday morning, the issue of when he properly reported, his normal schedule was 8 a.m. to 5 p.m., which was testified by his supervisor. That was his normal schedule. It may not be his regularly scheduled. And he rotated to the Garland office. He rotated between offices, which is why he chose to go to the Garland office, because that was his Tuesday location. As to the argument that, in fact, he was at the wrong place, he testified that he never received an e-mail, and the phone call with his supervisor was only about where to report on Monday. So that is why he chose to go to the Garland office on Tuesday, when he sent a text message to his supervisor the night before asking specifically where they wanted him to report and got no response. The issue of, I think it's important to note also that the notice of intent or the notice requirement, the characterization in it, so there is a broad notice requirement, and their position is that he provided notice with this phone call. And it was not on the way home. It was not. It was while he was still in his drill, in his service period. But he had that phone call and then went back into a senior staff meeting and was not yet released from service. So, again, the period for making such a report to work, whether it's physical, which, again, the only court that's ruled on that has suggested that it would be a physical reporting to work, or whether it's any kind of notice will do, it was prior to the time frame when that was permissible or when that was contemplated in the statute, but then it would have been insufficient at any rate. He did not make any promise to be there, only acknowledged the request that he be there. But I guess I'm getting the main issue here, I think, when you come to if you regard they have taken the position, the appellee has taken the position that their particular policies, employment policies, trump the USERRA in this case. And I think it's important because if the court ultimately concludes and comes to a 4311 question and ultimately concludes, which it does not sound that that's the way it's going to go, but if the court were ultimately to move it out of a 4312 and move it into 4311, that it's an important distinction that the very termination is based off of his reporting within the time required under 4312 and not his reporting in the time required by their policies, which he was not subject to at the time. And so I think that's the issue. Thank you, Your Honors. Thank you.